**UNITED STATES DISTRICT COURT**

**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| MARIE DECUNTO, and<br>JOSEPH DECUNTO, her husband,<br><br>Plaintiffs,<br><br>v.<br><br>WYETH dba WYETH, INC.; WYETH PHARMACEUTICALS INC.; PHARMACIA & UPJOHN COMPANY LLC fka PHARMACIA & UPJOHN COMPANY; PFIZER INC.; and GREENSTONE LTD,<br><br>Defendants. | CA 06 144T<br>NO. _________<br><br>COMPLAINT FOR DAMAGES<br>Personal Injury Action (28 U.S.C. §1332)<br><br>[DEMAND FOR JURY TRIAL] |

COME NOW the Plaintiffs, Marie DeCunto and Joseph DeCunto, and pursuant to Order of Judge Wilson concerning this case entered in *Ursula Bryan, et al. v. Wyeth, et al.*, MDL Docket No. 4:03CV1507-WRW, 4:05CV1710, on February 28, 2006 (attached as Exhibit 1) allege and aver as follows:

NATURE OF THE CASE

1. Plaintiff Marie DeCunto developed breast cancer caused by her ingestion of prescription hormone replacement therapy medications, specifically Prempro, Premarin and Provera. This lawsuit asserts claims for negligence; strict product liability for design defect; strict product liability for failure to warn; and breach of implied warranty against the defendants responsible for the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of those hormone therapy products that caused her breast cancer. Plaintiff's spouse, Joseph DeCunto, asserts a claim for his loss of consortium arising from plaintiff Marie DeCunto's injuries and damages.

JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter, originally filed as part of *Ursula Bryan, et al. v. Wyeth, et al.*, MDL Docket No. 4:03CV1507-WRW, 4:05CV1710, pursuant to Order of the court entered in *Bryan* on February 28, 2006 (attached as Exhibit 1).

3. The events giving rise to this cause of action occurred in substantial part in this District, where defendants transact business.

**THE PARTIES**

Plaintiff

4. At all material times, plaintiff Marie DeCunto and plaintiff's spouse, plaintiff, Joseph DeCunto, have been residents and citizens of Rhode Island.

5.

Defendants

6. Defendants as to Premarin and Prempro plaintiff ingested:

a. Defendant Wyeth dba Wyeth, Inc. is a Delaware corporation with its principal place of business in Madison, New Jersey. At all relevant times, this defendant was engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drugs Prempro, Premarin, Aygestin and Cycrin.

b. Defendant Wyeth Pharmaceuticals Inc. is a Delaware corporation with its principal place of business in Collegeville, Pennsylvania. At all relevant times, this defendant was engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drugs Prempro, Premarin, Aygestin and Cycrin.

c. For purposes of this Complaint, all of the Wyeth companies, corporations, subsidiaries, and divisions will be collectively referred to as "Wyeth." Wyeth includes any and all parents, subsidiaries, affiliates, divisions, franchises, partners,

joint ventures and organizational units of any kind, their predecessors, successors and assigns and their present officers, directors, employees, agents, representatives and other persons acting on their behalf, including but not limited to Wyeth-Ayerst Laboratories Company; Wyeth-Ayerst Laboratories Inc.; Wyeth-Ayerst Pharmaceuticals Inc.; and Ayerst Laboratories Inc. At all material times before March 11, 2002, Wyeth conducted business, operated under the name, and was formerly known as American Home Products Corporation.

7. <u>Defendants as to Provera plaintiff ingested:</u>

a. Defendant Pharmacia & Upjohn Company LLC fka Pharmacia & Upjohn Company fka The Upjohn Company is a Delaware corporation with its principal place of business in Peapack, New Jersey. At all relevant times, this defendant was engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drug Provera, Ogen and Medroxyprogesterone.

b. Defendant Pfizer Inc. fka Chas. Pfizer & Co. is a Delaware corporation with its principal place of business in New York, New York. At all relevant times, this defendant was engaged in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drug Provera. Upon information and belief, Pfizer Inc.'s merger with Pharmacia Corporation, including its subsidiary, Pharmacia & Upjohn Company, has made defendant Pfizer responsible for the obligations, debts and liabilities of Pharmacia & Upjohn.

c. Defendant Greenstone, Ltd. ("Greenstone") is a Delaware corporation headquartered and with a principal place of business at 7000 Portage Road, Kalamazoo, Michigan. At all times relevant hereto, Greenstone was engaged in, *inter alia*, the business of design, manufacture, production, testing, study,

inspection, mixture, labeling, marketing, advertising, sales, promotion, and/or distribution of pharmaceutical products, including the hormone therapy drug Medroxyprogesterone.

## FACTUAL ALLEGATIONS

### Plaintiffs' Injuries

8. Plaintiff Marie DeCunto ingested defendants' hormone therapy drugs, specifically Provera, Premarin and Prempro. She first began ingesting the hormone therapy drugs in 1995. She stopped ingesting the hormone therapy drugs in 1999.

9. As a result of ingesting these hormone drugs, plaintiff developed breast cancer, resulting in personal injuries and damages. Her breast cancer was diagnosed in June 1999 in Providence, Rhode Island. Plaintiff Marie DeCunto has been married to her husband, plaintiff Joseph DeCunto, at all relevant times.

10. Plaintiff Joseph DeCunto asserts a claim of loss of consortium as a result of plaintiff, Marie DeCunto's injuries.

### Defendants' Misconduct

11. At all material times, each defendant was responsible for designing, manufacturing, producing, testing, studying, inspecting, mixing, labeling, marketing, advertising, selling, promoting, and/or distributing their hormone drugs described herein, which plaintiff ingested.

12. Each defendant had an independent obligation to know, analyze, and disclose scientific and medical information about their hormone therapy drugs in a timely and adequate manner, and to provide warnings about risks and side effects as soon as it was aware of them. Each defendant failed to do so with respect to their hormone therapy drugs that plaintiff ingested, including by failing to know, analyze, and/or disclose an increased incidence and risk of strokes, blood clots, heart attacks, breast cancers, and ovarian cancer from these drugs.

13. Each defendant made claims regarding the health benefits of ingesting their hormone drugs, and the risks and side effects of these drugs. Each defendant knew or should have known that these claims were false and misleading. They failed to adequately disclose the true health consequences, and the true risks and side effects from these drugs, including the increased incidence and risks of

strokes, blood clots, heart attacks, breast cancers, and ovarian cancer.

14. Each defendant failed to conduct adequate pre-marketing clinical testing and research, and failed to conduct adequate post-marketing surveillance, to determine the safety of their hormone drugs, including with respect to the causal connection between their hormone therapy drugs and strokes, blood clots, heart attacks, breast cancers, and ovarian cancer.

15. Each defendant failed to disclose on their warning labels or elsewhere that adequate pre-marketing clinical testing and research, and adequate post-marketing surveillance, had not been done, thereby giving the false impression that their hormone therapy drugs had been sufficiently tested. Each defendant knew or should have known that, at all material times, its communications about the benefits, risks, and adverse effects of its hormone therapy drugs, including communications in labels, advertisements and promotional materials, were materially false and misleading. In the alternative, each defendant was ignorant of whether or not its communications about its hormone drugs were true in material ways.

16. Plaintiff would not have ingested the hormone therapy drugs described herein, or would have discontinued their use, or would have used safer alternative methods, had defendants disclosed the true health consequences, risks, and adverse events, including the increased incidence and risk of strokes, blood clots, heart attacks, breast cancers, and ovarian cancer, among other illnesses, caused by their hormone drugs.

17. Each defendant's nondisclosures and misrepresentations as alleged herein were material, and were substantial factors that contributed directly and causally, and naturally and necessarily, to the serious injuries and damages that plaintiff has suffered, and to her spouse's loss of consortium.

## FRAUDULENT CONCEALMENT

18. Any applicable statutes of limitations have been tolled by the knowing and active concealment and denial of material facts known by defendants when they had a duty to disclose those facts. They have kept plaintiff ignorant of vital information essential to her pursuit of these claims, without any fault or lack of diligence on plaintiff's part, for the purpose of obtaining delay on plaintiff's part in filing a complaint on her causes of action. Their fraudulent concealment did result in such delay. Plaintiff could not reasonably have discovered these claims until shortly before filing this complaint.

19. The defendants are and were under a continuing duty to disclose the true character, quality, and nature of their hormone drugs that plaintiff ingested, but instead they concealed them. As a result, defendants are estopped from relying on any statute of limitations defense.

## CLAIMS FOR RELIEF

### First Claim Against All Defendants

### (Negligence)

20. Plaintiffs reallege all previous paragraphs.

21. Defendants introduced their hormone therapy drugs described herein into the stream of commerce. At all material times, defendants had a duty to plaintiff and other consumers of their hormone therapy drugs to exercise reasonable care in order to properly design, manufacture, produce, test, study, inspect, mix, label, market, advertise, sell, promote, and distribute these products. This includes a duty to warn of side effects, and to warn of the risks, dangers, and adverse events associated with their hormone drugs.

22. Defendants knew, or in the exercise of reasonable care should have known, that their hormone therapy drugs were of such a nature that they were not properly designed, manufactured, produced, tested, studied, inspected, mixed, labeled, marketed, advertised, sold, promoted, and distributed, and they were likely to cause injury to those who ingested them.

23. Defendants were negligent in the design, manufacture, production, testing, study, inspection, mixture, labeling, marketing, advertising, sales, promotion, and distribution of their hormone therapy drugs, and breached duties they owed to plaintiff. In particular, defendants:

a. Failed to use due care in the preparation of their hormone therapy drugs to prevent the aforementioned risks to women when the drugs were ingested;

b. Failed to use due care in the design of their hormone therapy drugs to prevent the aforementioned risks to women when the drugs were ingested;

c. Failed to conduct adequate pre-clinical testing and research to determine the safety of their hormone therapy drugs;

d. Failed to conduct adequate post-marketing surveillance to determine the safety of their hormone therapy drugs;

e. Failed to accompany their products with proper warnings regarding all possible adverse side effects associated with the use of their hormone therapy drugs and the comparative severity and duration of such adverse effects;

f. Failed to use due care in the development of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

g. Failed to use due care in the manufacture of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

h. Failed to use due care in the inspection of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

i. Failed to use due care in the labeling of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

j. Failed to use due care in the marketing of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

k. Failed to use due care in the promotion of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

l. Failed to use due care in the selling of their hormone therapy drugs to prevent the aforementioned risks to individuals when the drugs were ingested;

m. Failed to provide adequate information to healthcare providers for the appropriate use of their hormone therapy drugs;

n. Failed to adequately warn about the health consequences, risks, and adverse events caused by their hormone therapy drugs; and

o. Were otherwise careless and negligent.

24. Defendants knew or should have known that their hormone therapy drugs caused unreasonable harm and dangerous side effects that many users would be unable to remedy by any means. Despite this, defendants continued to promote and market their hormone therapy drugs for use by consumers, including plaintiff, when safer and more effective methods of countering the negative health effects of menopause were available.

25. It was foreseeable to defendants that consumers, including plaintiff, would suffer injury

as a result of defendants' failure to exercise ordinary care as described herein.

26. As a direct and proximate result of defendants' conduct, plaintiffs suffered the injuries and damages specified herein.

**Second Claim Against All Defendants**

**(Strict Liability: Design Defect)**

27. Plaintiffs reallege all previous paragraphs.

28. Defendants manufactured, sold, and supplied the hormone therapy drugs described herein, and at all material times were in the business of doing so. They placed these drugs into the stream of commerce. These drugs were expected to, and did, reach plaintiff without substantial change in their condition. Plaintiff ingested these hormone therapy drugs.

29. At the time the hormone therapy drugs left defendants' hands, these drugs were in a condition not contemplated by plaintiff, and were unreasonably dangerous to her. These hormone therapy drugs were each dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them. They were more dangerous than plaintiff contemplated.

30. The risks of each of these hormone therapy drugs outweigh its utility. There were practicable and feasible safer alternatives to the defendants' hormone therapy drugs for treating menopause symptoms.

31. Defendants' hormone drugs are defective and unreasonably dangerous.

32. As a direct and proximate result of defendants' conduct, plaintiffs suffered the injuries and damages specified herein.

**Third Claim Against All Defendants**

**(Strict Liability: Failure to Warn)**

33. Plaintiffs reallege all previous paragraphs.

34. Defendants manufactured, sold, and supplied the hormone therapy drugs described herein, and at all material times were in the business of doing so. They placed these drugs into the stream of commerce. These drugs were expected to, and did, reach plaintiff without substantial change in their condition. Plaintiff ingested these hormone therapy drugs.

35. When defendants placed their hormone therapy drugs into the stream of commerce, they

failed to accompany them with adequate warnings. They failed to warn of the true risks and dangers, and of the symptoms, scope and severity of the potential side effects of the hormone therapy products plaintiff ingested. These risks, dangers, and side effects include, but are not limited to, strokes, blood clots, heart attacks, breast cancers, and ovarian cancer.

36. Due to the inadequate warnings as alleged herein, at the time the hormone therapy drugs left defendants' hands, these drugs were in a condition not contemplated by plaintiff, and were unreasonably dangerous to her. They were dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchased them. They were more dangerous than plaintiff contemplated. Furthermore, their risks outweighed their utility.

37. Defendants' hormone drugs described herein are defective and unreasonably dangerous.

38. Had defendants provided adequate warnings and instructions, plaintiff would not have ingested these drugs, and would not have suffered the personal injuries she did.

39. As a direct and proximate result of defendants' conduct, plaintiffs suffered the injuries and damages specified herein.

**Fourth Claim Against All Defendants**

**(Breach of Implied Warranty)**

40. Plaintiffs reallege all previous paragraphs.

41. At the time defendants designed, manufactured, produced, tested, studied, inspected, mixed, labeled, marketed, advertised, sold, promoted, and distributed their hormone drugs for use by plaintiff, they knew of the use for which their hormone drugs were intended, and impliedly warranted their products to be of merchantable quality and safe and fit for their intended use.

42. Contrary to such implied warranty, their hormone drugs were not of merchantable quality or safe or fit for their intended use because they were and are unreasonably dangerous and unfit for the ordinary purposes for which they were used, as alleged herein.

As a direct and proximate result of defendants' conduct, plaintiffs suffered the injuries and damages specified herein.

**Fifth Claim Against All Defendants**

**(Loss of Consortium)**

43. Plaintiff's spouse, Joseph DeCunto, realleges all previous paragraphs.

44. Plaintiff Joseph DeCunto should be awarded monetary damages for his loss of spousal services, society and companionship.

**PRAYER FOR RELIEF**

45. WHEREFORE, plaintiffs seek judgment in their favor against the defendants, jointly and severally, as follows:

a. Economic and non-economic damages in an amount in excess of $75,000 as to each defendant as provided by law and to be supported by the evidence at trial;

b. An award of attorneys' fees and costs of suit, as provided by law;

c. Such other legal and equitable relief as this Court deems just and proper

**JURY DEMAND**

Plaintiffs request trial by jury.

DATED this 27th day of March 2006

Donald A. Migliori
MOTLEY RICE LLC
321 South Main Street
Providence, RI 02903
(401) 457-7700 Telephone
(401) 457-7708 Facsimile

Of Counsel:

Stephanie Lyons
Timothy F. Thompson, Jr
SIMMONSCOOPER LLC
707 Berkshire Blvd
East Alton, IL 62024
(618)259-2222
(618)259-2251 fax

And

Gregory J. Bubalo
D. Brian Rattliff
BUBALO & HIESTAND, PLC
401 S. Fourth St., Suite 800
Louisville, Kentucky 40202
Telephone: 502/753-1600
Facsimile: 502/753-1601

And

John Driscoll
Seth Webb
BROWN & CROUPPEN
720 Olive Street, Suite 1800
St. Louis, MO 63101
Telephone: 314/421-0216
Facsimile: 314/421-0359

Attorneys for Plaintiff